United States District Court
District of Massachusetts

| | |
|---|---|
| Barbara Dee,                          )<br>                                       )<br>        Plaintiff,                   )<br>                                       )<br>        v.                             )<br>                                       )<br>Chelsea Jewish North Shore            )<br>Assisted Living, Inc.,                )<br>                                       )<br>        Defendant.                    )<br>                                       ) | Civil Action No.<br>21-10980-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

   This case arises out of claims that Chelsea Jewish North Shore Assisted Living, Inc. ("Chelsea" or "defendant"), a Massachusetts corporation that owns, operates and manages assisted living facilities for elderly persons, failed to comply with state law in charging, collecting and handling fees and security deposits from its current and former residents.

   Barbara Dee ("Dee" or "plaintiff"), a current resident at one of Chelsea's facilities, initiated this putative class action in state court, alleging statutory violations, as well as common law claims for breach of contract and unjust enrichment. In June, 2021, Chelsea filed a notice of removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2,

119 Stat. 14 (2005) (codified as amended in 28 U.S.C. § 1332(d)(2)).  Pending before this Court is Dee's motion to remand.

In October, 2021, the Court ordered plaintiff to conduct supplemental discovery to determine the citizenship of putative class members, as relevant to federal jurisdiction based upon CAFA.  In response to plaintiff's limited interrogatories, Chelsea supplied a list of putative class members, as well as the last known address of each putative class member and of a "Responsible Party" to whom security deposits and/or outstanding invoices were issued upon the departure of a putative class member from the facility.  In light of that supplemental discovery, the parties submitted, in January, 2022, additional briefing on plaintiff's motion to remand.

**I. Motion to Remand**

    **A. Legal Standard**

CAFA confers federal jurisdiction over putative class actions in which the putative class includes at least 100 members, at least one class member is diverse in citizenship from any defendant and the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d).  There are, however, both discretionary and mandatory exceptions to that general rule under which jurisdiction remains with the state court.  One of

those exceptions, the home state exception, requires a district court to decline jurisdiction over a putative class action when:

> two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B). Citizenship is determined as of the time the suit is filed. See Melendez-Garcia v. Sanchez, 629 F.3d 25, 41 (1st Cir. 2010). Because the Court ultimately concludes that the requirements of that exception are satisfied and the Court must therefore decline jurisdiction, the Court does not consider the applicability of the two other exceptions to federal jurisdiction under CAFA that plaintiff invokes.

The plaintiff bears the burden of demonstrating that such an exception applies. In re Hannaford Bros. Co. Customer Data Security Breach Litigation, 564 F.3d 75, 78 (1st Cir. 2009). Although the First Circuit Court of Appeals has not determined the weight of that burden, other circuit courts have held that the plaintiff must satisfy elements of CAFA's jurisdictional exceptions by either a "preponderance of evidence," Hollinger v. Home State Mut. Ins. Co., 654 F.3d 564, 570 (5th Cir. 2011), or a "reasonable probability," Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir.2006).

> Under either approach, the movant must make some minimal showing of the citizenship of the proposed class.

Reece v. AES Corp., 638 F. Appx. 755, 769 (10th Cir. 2016) (quotation omitted); see also Mondragon v. Cap. One Auto Fin., 736 F.3d 880, 884 (9th Cir. 2013) ("[T]here must ordinarily be at least some facts in evidence from which the district court may make findings regarding class members' citizenship under CAFA."). In assessing the sufficiency of that showing, it may be appropriate to look outside the four corners of the complaint. See In re Hannaford Bros., 564 F.3d at 79. The evidentiary standard must, however, "be practical and reasonable" considering the early stage of litigation. Saunders v. Sappi N. Am., Inc., No. 1:21-CV-00245-NT, 2021 WL 5984996, at *5 (D. Me. Dec. 16, 2021) (quoting Hollinger, 654 F.3d at 573). Where, as here, the proposed class is discrete in nature, "common sense presumption[s] should be utilized in determining whether citizenship requirements have been met." Id.; see also Mondragon, 736 F.3d at 886 ("[D]istrict courts are permitted to make reasonable inferences from facts in evidence....").

Within the context of similar jurisdictional analyses, the First Circuit has explained that "a federal court may consider which party has better access to the relevant information." Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009).

**B. Application**

As set forth in the complaint, the putative class includes:

> All current and former tenants who reside at assisted living facilities owned, operated and/or managed by CJC in the Commonwealth of Massachusetts who were charged:
>
> A. Community Fee (or any fee) not expressly enumerated by M.G.L. c.186, § 15B(1)(b); and/or
>
> B. A Security Deposit

Dee contends that remand is required under the home state exception because the information supplied by Chelsea pursuant to the Court's order for limited discovery indicates that more than two-thirds of the putative class members maintain Massachusetts citizenship or did so prior to their deaths. Among the 436 putative class members identified by Chelsea, 133 died while residing at Chelsea's facilities, 104 are current residents and 140 are no longer residents but have last known addresses in the Commonwealth. Among the remaining 59 putative class members, all of whom are former residents, Chelsea has no record of a last known address for 56 and three have last known addresses that are out-of-state.

Residence does not determine citizenship for purposes of federal jurisdiction. See Aponte-Dávila v. Mun. of Caguas, 828 F.3d 40, 49 (1st Cir. 2016) ("Jurisdictionally speaking,

residency and citizenship are not interchangeable."). Rather, citizenship is usually equated with domicile and

> a person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.

Valentin v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001) (quotation omitted).  Thus, domicile, unlike residence, has a subjective component, though "[e]vidence of a person's place of residence...is prima facie proof of his domicile," Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008).  If there are other factors available to determine citizenship, however, "looking at residency alone is an insufficient analysis." Aponte-Davila v. Municipality of Caguas, 2017 WL 3017702, at *34, n.4 (D.P.R. July 17, 2017) (citations omitted).

Although Dee has provided no direct evidence concerning the domiciles of putative class members, she has provided sufficient evidence to conclude that, under either a preponderance of evidence standard or a reasonable probability standard, two-thirds or more of the putative class members are domiciled of the Commonwealth.  Chelsea's exclusive access to the relevant information, the unavailability of information concerning factors beyond residence to determine the domiciles of putative class members, and the paucity of members for whom Chelsea has

affirmative evidence of out-of-state residence all prescribe such a finding.

Furthermore, where the putative class is defined by residence in Chelsea's in-state facilities, that factor is particularly relevant to determining domicile.  See Freedman v. Dan O'Brien Kia Norwood, No. 20-CV-11369-RWZ, 2021 WL 601702, at *2 (D. Mass. Jan. 6, 2021) ("[T]he case itself centers on...exactly the type of property the First Circuit has determined is evidence of domicile.").

Most significant to this conclusion is, however, the unifying characteristics of the putative class members.  All are or were elderly residents of Chelsea's assisted living facilities.  While residence cannot be equated to domicile, it strains credulity to argue that the mobility of this elderly population that presumably relied upon Chelsea's services due to limitations associated with aging suggests a high proportion of out-of-state residents.

The information available with respect to putative class members supports the commonsense assumption that this population is not highly mobile across state lines.  In fact, among the minority population that has left Chelsea's facilities, only three are known to have moved out-of-state.  Moreover, even if all of the 56 individuals for whom Chelsea has no last known

address were domiciled out-of-state, many more than that number would have to be domiciled outside of the Commonwealth to avoid CAFA's home state exception.  Among the remaining putative class members, there is simply no reasonable likelihood of such an out-of-state population, notwithstanding the elapsed time between complaint and discovery.

**ORDER**

For the foregoing reasons, the motion of plaintiff Dee to remand (Docket No. 10) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 10, 2022